UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal Action No.: 4:15-cr-00097-RBH-1 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Jamesthy Wardell Graham, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court following a hearing held on September 9, 2015, regarding a motion to suppress filed by Defendant Jamesthy Wardell Graham. The Court took the motion under advisement. Having considered the witnesses' testimony and the parties' arguments, the Court denies Graham's motion.

### **Factual Background**[1]

On the night of May 29, 2014, Deputy Chad Reid of the Florence County Sheriff's Office responded to a 911 hangup call made from a residence in Pamplico, South Carolina. As Deputy Reid arrived at the scene at 10:27 P.M., he saw a large crowd of people in the yard split into two groups, one near the roadway and the other near the residence. He also saw a Chevrolet Tahoe parked illegally in the road; Graham was sitting inside the vehicle in the driver's seat.

As Deputy Reid was exiting his patrol car, Graham started the Tahoe's engine and attempted to leave the scene. Deputy Reid told Graham to stop, walked to the passenger's side of the Tahoe, shined his flashlight inside, and saw in plain view two open containers of beer in the center console. Deputy Reid told Graham to turn off the Tahoe, asked for his driver's license, and told Graham to wait while he inquired about the 911 call.

---

[1] The following facts are taken from the testimony of the two law enforcement officers, Deputies Chad Reid and Clay Lowder, who testified at the suppression hearing.

Deputy Reid radioed for a warrants check on Graham and began asking people in the two nearby groups if anybody had dialed 911. A female told Deputy Reid that she had called because of an argument, but now "everything was fine and they didn't need . . . assistance." Deputy Reid refocused his attention on Graham.

Dispatch transmitted the results of the warrants check and informed Deputy Reid that the NCIC[2] report showed Graham had an outstanding warrant in Myrtle Beach, South Carolina, and was to be considered armed and dangerous. Shortly thereafter, Deputy Clay Lowder arrived on the scene as backup, and Deputy Reid informed him about Graham's outstanding warrant and the armed and dangerous warning. The officers approached the Tahoe, had Graham exit it, and detained him based on the information received from the warrants check. The deputies advised Graham that he was being detained, and Deputy Lowder handcuffed Graham and moved him away from the Tahoe and into the nearby yard.

Deputy Lowder testified that in light of the armed and dangerous bulletin, he followed routine procedure and patted Graham down for safety purposes.[3] While frisking Graham, Deputy Lowder advised Graham of the reason for the patdown and, without first reading *Miranda*[4] warnings to him, asked if he had any weapons or other objects on him that could cause injury. Graham responded that he had a firearm located underneath the driver's seat of the Tahoe. Deputy Lowder promptly retrieved

---

[2] NCIC is the common abbreviation for National Crime Information Center.

[3] Graham conceded at the suppression hearing that the patdown was proper.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

a gun from the specified location in the Tahoe.[5, 6]

The officers arrested Graham and placed him in the backseat of Deputy Reid's patrol car. While Deputy Reid was driving Graham to the jail, Graham made a statement, which was not given in response to any question or other prompt, that "he had that gun for protection because people around Pamplico didn't like him."

A grand jury indicted Graham for being a felon in the knowing possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). ECF No. 1. The Government filed the indictment on February 26, 2015, and on March 16, 2015, Graham appeared for his arraignment and entered a not guilty plea. ECF Nos. 1 & 14. Graham filed a motion to suppress on August 3, 2015. ECF No. 59.

## Discussion

Graham moves to suppress three pieces of evidence: (1) the firearm, (2) the first statement—given to Deputy Lowder during the patdown—that he had a firearm underneath the driver's seat of the Tahoe, and (3) the second statement—given to Deputy Reid during the drive to jail—that he had a gun for protection. Because Graham has raised both Fourth and Fifth Amendment arguments, the Court addresses each issue in turn, beginning with the Fifth Amendment claim.

**I.      Fifth Amendment Claim: First and Second Statements**

Graham argues his statements to Deputies Lowder and Reid must be suppressed because they were obtained in violation of his right against self-incrimination. He contends that he was in custody

---

[5]    Neither officer attempted to search the Tahoe before Graham told Deputy Lowder about the gun.

[6]    The testimony from the suppression hearing does not specify the type of gun seized from the Tahoe. However, the indictment alleges the gun was a .380 caliber Hi-Point pistol, as do Graham's motion to suppress and the Government's response. ECF No. 1; ECF No. 59-1 at 2; ECF No. 61 at 2.

when Deputy Lowder asked if he had any weapons and when he spoke to Deputy Reid in the patrol car, and that neither officer had previously administered the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

In *Miranda*, the United States Supreme Court held that before interrogating a person in custody, a law enforcement officer must advise the person that he has the right to remain silent, that any statement he makes may be used against him in a criminal prosecution, and that he has the right to have an attorney, either retained or appointed, present during questioning. 384 U.S. at 444. A suspect may waive his *Miranda* rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation, so long as he makes the waiver voluntarily, knowingly and intelligently. *Id.* Statements obtained in violation of the *Miranda* rule are generally inadmissible at trial. *Stansbury v. California*, 511 U.S. 318, 322 (1994).

To determine whether a defendant is in custody, a court must examine when, under a totality of the circumstances, the defendant's "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "The operative question is whether, viewed objectively, 'a reasonable man in the suspect's position would have understood his situation' to be one of custody." *United States v. Hargrove*, 625 F.3d 170, 178 (4th Cir. 2010) (quoting *Berkemer*, 468 U.S. at 442). A court must examine "all of the circumstances surrounding the interrogation" and ascertain "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.'" *Stansbury*, 511 U.S. at 322, 325. A police officer need provide *Miranda* warnings only when a suspect is in custody. *Hargrove*, 625 F.3d at 178.

**1.     First Statement to Deputy Lowder**

Graham argues his statement to Deputy Lowder—that he had a firearm located underneath the driver's seat of the Tahoe—must be suppressed as the product of an unlawful interrogation. The Court disagrees.

Graham was in custody and subject to interrogation at the time Deputy Lowder asked during the patdown if he had any weapons on his person. Although the officers' testimony does not indicate Graham was under formal arrest at the time he made his first statement, an examination of the totality of the circumstances shows he was in custody because he had been detained, handcuffed, and surrounded by Deputies Lowder and Reid. A reasonable man in Graham's position would not believe he was free to leave. *See Hargrove*, 625 F.3d at 178. Graham argues *Miranda* was violated.

However, the Court finds Graham's statement is admissible under the public safety exception to *Miranda*. Under the public safety exception, police officers may ask a suspect "questions necessary to secure their own safety or the safety of the public," without first *Mirandizing* him. *New York v. Quarles*, 467 U.S. 649, 658-59 (1984). Application of the public safety exception depends upon whether the police questioning "in any way relate[d] to an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." *Id.* at 659 n.8. The Supreme Court in *Quarles* explained the public safety exception is premised on the basis that "police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 658-59. In interpreting *Quarles*, the Fourth Circuit explained "the exception applies not only to protect the public safety but also police safety as well, and that the exception is not to be analyzed in light of the subjective motive of the questioner but rather from the objective perspective of the presence of a public danger." *United States v. Mobley*, 40 F.3d 688, 692 (4th Cir. 1994).

The Court concludes that based on the totality of the circumstances, it was objectively reasonable for Deputy Lowder to ask Graham whether he had any weapons on him without first *Mirandizing* him. The Court finds Deputy Lowder's testimony is credible regarding this issue. Before asking this question, Deputy Lowder knew there was an outstanding warrant for Graham, and more importantly, knew he was to be considered armed and dangerous. Deputy Lowder therefore had reason to suspect that Graham could be carrying a weapon on his person. Additionally, it was nighttime and a crowd of people was present in the yard where Graham was standing during the patdown. The potential presence of a gun on or near Graham threatened not only the deputies' and Graham's safety, but also that of the multiple bystanders. *See Quarles*, 467 U.S. at 657-59 (holding that even though the suspect was handcuffed and posed no threat to the officers when questioned, the *Miranda*-less interrogation was permissible because the nearby gun created a clear danger to the public; and providing the example that "an accomplice might make use of it"). There were two groups of people at the scene, and the underlying 911 investigation was for a residential disturbance, the exact cause of which neither deputy knew. Even though Graham was handcuffed, based on the unclear reason for the 911 call, the officers could reasonably have believed there might be other dangerous individuals in the vicinity of the scene. *See United States v. Young*, 58 F. App'x 980, 982 (4th Cir. 2003) (finding the public safety exception applied to a scenario where police officers had handcuffed the defendant but had not yet secured the premises and "could reasonably have believed that there might be other armed individuals present in the home"). Considering these facts, the Court concludes that Deputy Lowder's question was not designed to elicit a testimonial response, that it was made consistent with an objectively reasonable concern for immediate danger to the police or the public, and that Graham's statement to Deputy

6

Lowder is admissible under the public safety exception to *Miranda*.[7]

### 2. Second Statement to Deputy Reid

Graham asserts his statement to Deputy Reid—that he had a gun for protection—was also given in violation of *Miranda*. The Court disagrees.

The *Miranda* rule applies only to statements that are obtained as the result of custodial interrogation; it does not apply to voluntary and spontaneous statements, even those given while a suspect is in police custody, that are not the product of interrogation. *Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); *United States v. Wright*, 991 F.2d 1182, 1186-87 (4th Cir. 1993); *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985). Here, Graham was in custody when he made the second statement because he had been placed under arrest and was sitting in the back of a police car going to jail. However, Graham's spontaneous statement that he had a gun for protection was unsolicited and not given in response to any questioning by Deputy Reid, according to Deputy Reid's testimony. The Court finds Deputy Reid was credible in this regard. *See Wright*, 991 F.2d at 1186-87 (holding a defendant's statement—"that he owned the Mossberg rifle"—was admissible because it was voluntary, "unsolicited[,] and not made in response to any interrogation"); *Giarratano v. Procunier*, 891

---

[7] Graham asserts the Court must suppress not only his first statement but also the gun found in the Tahoe and the second statement he made while in Deputy Reid's patrol car on the way to jail, arguing the gun and the second statement were produced only because of his inadmissible first statement. The Court summarily disposes of this "fruit of the poisonous tree" argument. The United States Supreme Court and the Fourth Circuit have refused to apply the fruit of the poisonous tree doctrine to Fifth Amendment cases. *See Oregon v. Elstad*, 470 U.S. 298, 304-08 (1985) (stating "the *Miranda* presumption . . . does not require that the statements and their fruits be discarded as inherently tainted"); *Dickerson v. United States*, 530 U.S. 428, 441 (2000) (Our decision in [*Elstad*]—refusing to apply the traditional 'fruits' doctrine developed in Fourth Amendment cases— . . . simply recognizes the fact that unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment."); *United States v. Sterling*, 283 F.3d 216, 218-19 (4th Cir. 2002) (rejecting the appellant's argument "that the district court erred in refusing to suppress the shotgun found in the pickup truck as a result of his unwarned statement to police" because "derivative evidence obtained as a result of an unwarned statement that was voluntary under the Fifth Amendment is never 'fruit of the poisonous tree'").

F.2d 483, 488 (4th Cir. 1989) (finding that although the defendant was in custody, his "spontaneous and voluntary" threat was not barred by *Miranda*). The Court concludes Graham's second statement is not barred by *Miranda* and is admissible at trial.

## II.     Fourth Amendment Claim: The Firearm

Graham argues the firearm seized from the Tahoe is inadmissible as the product of a warrantless search and seizure violating the Fourth Amendment. Relying on *Arizona v. Gant*, 556 U.S. 332 (2009), he contends the search did not fall within the parameters of the exception to the warrant requirement for a search of a vehicle incident to a recent occupant's arrest.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, to comply with the Fourth Amendment, police must obtain a warrant before conducting a search of an automobile. *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010).

In *Gant*, the Supreme Court specified the only two circumstances that permit police to conduct a warrantless search of a vehicle incident to the arrest of a recent occupant: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"; and (2) "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 343 (internal quotation marks omitted). The Court in *Gant* "addressed only the rule permitting warrantless searches incident to a lawful arrest, as applied in the context of vehicle searches, leaving unaltered other exceptions to the warrant requirement that might be relevant in that context," and the Court "expressly identified three such exceptions." *United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013) (citing *Gant*, 556 U.S. at 346-47). One of those exceptions is exigent

circumstances.[8]

Although Graham makes a plausible argument that the search incident to arrest exception is inapplicable in this case, the Court finds search and seizure of the firearm was proper under the exigent circumstances exception to the warrant requirement.[9]

"It is a hallmark of Fourth Amendment jurisprudence that the possibility of a threat to the safety of law enforcement officers may constitute exigent circumstances justifying a warrantless search or seizure." *United States v. Legg*, 18 F.3d 240, 244 (4th Cir. 1994). The exigent circumstances exception to the warrant requirement extends to "those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Arkansas v. Sanders*, 442 U.S. 753, 759 (1979), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). As discussed above, *Quarles* involved a Fifth Amendment issue; however, the Supreme Court in *Quarles* noted:

> We have long recognized an exigent-circumstances exception to the warrant requirement in the Fourth Amendment context. We have found the warrant requirement of the Fourth Amendment inapplicable

---

[8]  These exceptions are identified in the *Gant* decision:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, *Michigan v. Long* permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is dangerous and might access the vehicle to gain immediate control of weapons. If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross* authorizes a search of any area of the vehicle in which the evidence might be found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader. Finally, there may be still other circumstances in which safety or evidentiary interests would justify a search.

556 U.S. at 346-47 (internal citations and quotation marks omitted).

[9]  Because the Court finds the search and seizure of the firearm was proper under an independent exception to the warrant requirement, it need not consider whether the search incident to arrest exception applies in this case.

9

> in cases where the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.

467 U.S. at 653 n.3 (internal citations and quotation marks omitted); *see also United States v. Newsome*, 475 F.3d 1221, 1226 (11th Cir. 2007) ("*Quarles* holds that the warrantless seizure of a gun is 'objectively reasonable' under the Fourth Amendment when there is a real concern for the safety of the officers present or the public at large."); *United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989) ("The clear implication of *Quarles* is that a warrantless seizure of a weapon may be considered 'reasonable' within the meaning of the Fourth Amendment when justified by an officer's legitimate concern for someone's safety.").

This case involves a situation where exigent circumstances justified Deputy Lowder's seizure of the gun. In explaining why he seized the firearm, Deputy Lowder testified as follows:

> After [Graham's] detainment and the scene being secure as far as him, I went ahead and retrieved that firearm because I have a duty to act and make sure that that's in our possession and safely somewhere so that it doesn't cause any future problems or risk anything escalating in the situation.

The Court finds Deputy Lowder's testimony credible. When he retrieved the firearm, he and Deputy Reid were still in the process of securing the scene—at night—from which a 911 disturbance call had been made. It was reasonable for Deputy Lowder to believe that leaving a potentially loaded gun in the Tahoe posed a threat to his, Deputy Reid's, and the numerous bystanders' safety. Although Graham had been secured, a crowd of people remained within walking distance of the Tahoe, and any one of the bystanders could have known the location of the gun. Moreover, the officers had been dispatched in response to a 911 disturbance report, the precise cause of which remained unknown. Swift recovery of the gun was necessary to preserve the peaceful status quo of the scene, and the Court notes the scope

of Deputy Lowder's search did not exceed that required by the exigency of the situation.[10]

The facts of this case lead the Court to conclude the exigent circumstances exception to the Fourth Amendment warrant requirement permitted Deputy Lowder to immediately locate and secure the pistol to ensure the safety of both the officers and the public. Consequently, the firearm is not the product of an illegal search.[11]

---

[10]  The Court's finding of an exigent circumstance is consistent with other decisions addressing the same issue:

> While the mere presence of a firearm does not create an exigent circumstance, *United States v. Gooch*, 6 F.3d 673, 680 (9th Cir. 1993), courts have found that the police have the right to secure firearms that are unattended and pose a risk that the public will find the weapon. *See, e.g.*, *New York v. Quarles*, 467 U.S. 649, 656-58 (1984) (holding that officer's questions about where suspect had discarded gun were exception to *Miranda* requirement because public safety required officers to retrieve gun and not leave it where members of public could find it); *Cady v. Dombrowski*, 413 U.S. 433, 447-48 (1973) (finding police officer's opening of car's trunk without warrant did not violate Fourth Amendment because officer reasonably believed trunk contained gun, trunk was vulnerable to intrusion by vandals, and public might be endangered if intruder removed gun); *United States v. Webb*, 83 F.3d 913, 917 (7th Cir. 1996) (deciding that exigent circumstances allowed officer to retrieve shotgun from car trunk with keys still in the lock because gun could have been easily retrieved and officer feared gun's safety mechanisms might not have been activated, allowing gun to accidentally discharge); *United States v. Ware*, 914 F.2d 997, 1000-01 (7th Cir. 1990) (exigent circumstances permitted officer to search car for gun because it was either in car or had been discarded by defendant, and as such, might fall into untrained or malicious hands); *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986) (finding that inventory search of car done in violation of police policies lawful because officer reasonably suspected that car contained gun and search was reasonable to ensure the immediate protection of the public's safety).

*United States v. Castillo*, 48 F. App'x 611, 613-14 (9th Cir. 2002).

[11]  The Government further contends the automobile exception applies in this case. Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *see also United States v. Ross*, 456 U.S. 798, 820-21 (1982). "[T]he 'automobile exception' has no separate exigency requirement," *Maryland v. Dyson*, 527 U.S. 465, 466 (1999), and "[t]he scope of a search pursuant to this exception is as broad as a magistrate could authorize. Thus, once police have probable cause, they may search every part of the vehicle and its contents that may conceal the object of the search." *Kelly*, 592 F.3d at 589-90 (internal citation and quotation marks omitted). "[I]n contrast to *Gant*'s rule, this exception permits police officers to search a vehicle for evidence of any crime, not just the crime of arrest, but only on a showing of probable cause rather than a mere reasonable belief." *Baker*, 719 F.3d at 319. "Probable cause to search a vehicle exists when reasonable officers can conclude that what they see, in light of their experience, supports an objective belief that contraband is in the vehicle." *Id.* (internal quotation marks omitted).

**Conclusion**

The Court finds Graham's first statement was admissible under the public safety exception to the *Miranda* rule and his second statement was admissible as an unsolicited, spontaneous, and volunteered statement that did not result from custodial interrogation. The Court also finds that irrespective of Graham's *Gant* argument, the search for the gun in Graham's Tahoe was justified by the exigent circumstances exception to the warrant requirement of the Fourth Amendment. Accordingly, the Court **DENIES** Graham's [ECF No. 59] motion to suppress.

**IT IS SO ORDERED.**

Florence, South Carolina                                    s/ R. Bryan Harwell
September 15, 2015                                          R. Bryan Harwell
                                                            United States District Judge

---

On direct examination at the suppression hearing, Deputy Reid testified the initial warrants check with dispatch (the one run before Graham was detained) showed Graham had an outstanding warrant, was to be considered armed and dangerous, and "*that he had a felony conviction and he was not allowed to possess any weapons*." However, on cross-examination, Deputy Reid testified the initial warrants check returned results for an outstanding warrant and an armed and dangerous warning, but he did not testify the check generated a result for a felony conviction. The Court questioned Deputy Reid about this discrepancy in his testimony, asking him whether the initial warrants check actually revealed Graham had a prior felony, to which Deputy Reid answered, "I don't recall if they did. I don't think they did." After the Court's examination, the Government asked Deputy Reid to clarify the precise time he learned Graham was a convicted felon, and Deputy Reid testified he learned this information after Graham had been placed in the back of his patrol car.

Although the automobile exception may have validated the search of Graham's Tahoe, the Court finds the record from the suppression hearing does not contain a reliable factual basis to justify application of the automobile exception. It is unclear whether the officers had probable cause—at the time Deputy Lowder found the firearm—to search the Tahoe for evidence of other criminal activity independent of that for which Graham was being detained. *See generally Baker*, 719 F.3d at 319 (stating the automobile "exception permits police officers to search a vehicle for evidence of any crime, not just the crime of arrest"). There was no testimony by the officers about a state law criminal offense relating to the unlawful possession of a firearm in the vehicle, nor reliable evidence that the officers had been advised *before* the search that Graham was a felon and therefore could not have a firearm. Rather, the only state law criminal violations discussed in the officers' testimony were alleged open container and parking violations. It is clear the valid basis for the warrantless search by Deputy Lowder was the exigent circumstances exception, which was justified and objectively reasonable based on a totality of the circumstances.